## Case No. 13,901.

### THOMAS v. The KOSCIUSKO.

### [11 N. Y. Leg. Obs. 38.]

District Court, S. D. New York. 1853.

MARITIME LIEN—FOREIGN VESSEL—OWNER'S DOMICILE—CLAIMANT—MORTGAGEE IN POSSESSION—PRIORITIES—REGISTRY NOTICE.

1. The remedy in rem for supplies or repairs furnished here to a vessel foreign to the port is according to the law maritime, and is not governed by the local law.

2. When the vessel supplied is a domestic one, this court affords no other relief therefor than is provided by the state law.

3. In this respect a vessel owned in New Jersey and supplied in New York is a foreign vessel here.

[Cited in The Sarah J. Weed, Case No. 12,-350.]

4. The registry or enrollment in this port of a vessel owned out of the state does not render her a domestic vessel.

[Cited in The Albany, Case No. 131.]

5. The law appertaining to the domicile of the owner determines the character of personal property.

6. Material men residing in this state cannot, in this court, arrest a vessel owned in another state for supplies furnished by them to her in her own port, unless by virtue of the local law of the owner's domicile.

7. Objection to the right of a claimant to intervene in an admiralty cause must be taken by preliminary exception to his competency.

8. The objection will not be listened to after the cause is put at issue and brought to hearing upon the merits.

9. A mortgagee in possession is competent to intervene and contest claims affecting his lien upon the vessel.

10. A mortgage duly registered according to the law of this state has priority of lien on a domestic vessel over debts to material men subsequently accrued, although the mortgagor retains possession of her.

[Questioned in The Hendrik Hudson, Case No. 6,358.]

11. If the owner and mortgagor removes from the state to the place of residence of the mortgagee, keeping possession of the vessel, the mortgage lien given by the local law ceases.

12. Registry notice does not affect third parties, unless the owner continue to reside in this state.

13. A renewal of notice in the state registry, subsequent to the act of congress of July 29, 1850 [9 Stat. 440], does not retain a mortgage lien on a vessel unless the mortgage be also recorded in the office of the collector of the port.

These were libels filed on the 23d day of August, 1851, by the libellant [Henry B. Thomas] against the steamboat Kosciusko, to recover the amount of bills or repairs done on and supplies furnished the steamboat Kosciusko. The first cause was tried before District Judge Betts, in October term, 1852, and the other two abided its event. On the trial of the first cause, the following facts, embodied in the form of a written statement, were read in evidence, which facts were substantially the same in the other cases. They were as follows, viz.: In June, July, and

August, 1851, the libellant, a shipwright, residing in the city of New York, at the request of Clement M. Hancox, the owner of the steamboat Kosciusko, performed the work claimed for in the libel amounting to $233.67, which is due, with the interest from 8th August, 1851, to the libellant. Such work and materials were necessary and were charged by Thomas to the steamboat and owners. The items of the account commenced in May, 1851, and ended on the 8th August, 1851 and those after 1st May, 1851, up to 20th June, amounting to $56, were done on the said steamboat Kosciusko while she was lying up in Jersey City fastened to the wharf, where she had been lying and continued to lie up from December 19, 1850, to June 20, 1851. Items done after 20th June, 1851, were done and furnished on the vessel while at the city of New York. At the time this work was done, and from May 1, 1851, until after the filing of the libel in this suit, Clement M. Hancox, the owner of the vessel, was a resident of Jersey City, in the state of New Jersey. Before 1st May, 1851, he was a resident of the city of New York. The vessel was enrolled in the collector's office, New York, on the 12th day of April, 1850, by Clement M. Hancox. The vessel was attached under this libel on 23d August, 1851. Before she was attached she had been engaged in excursion business out of harbor of New York to neighboring places, and, in the prosecution of such business, made the following voyages, viz.: On the 22d of June she commenced making trips from New York to Cedar Grove on Staten Island, stopping at Fort Hamilton, and continued to run there daily, one or two trips a day, until the 28th of July, 1851. On the 29th July, 1851, she went on an excursion to the fishing banks. On the 30th July, and 3d, 7th, 9th, and 10th, of August, to Stratton Port, Long Island. On the 12th of August she went on an excursion to Newark, New Jersey. On the 16th she again went to Newark to fulfill a charter for an excursion from Newark to Shrewsbury, and on the 17th day of August, 1851, sailed from Newark with passengers for Shrewsbury, New Jersey, broke her machinery when she arrived within Shrewsbury inlet, and within a mile or two of Shrewsbury. Clement M. Hancox, the owner, did not claim and answer herein, but the same was made by Joseph W. Hancox, who claimed under two chattel mortgages of the vessel, dated June 13, 1850,—one given to him by Clement M. Hancox to secure the payment of $2,546.59, with interest, payable on demand; the other, dated the same day, executed by Clement M. Hancox to Clement D. Hancox, to secure payment of the sum of $2,500, with interest from November 3, 1849, on demand. These mortgages, when executed, were both filed in the office of the register of deeds, in the city of New York, on same date, and copies thereof, with statements of the amount claimed, were, for the

purpose of renewing them, afterwards filed in same office on the 3d June, 1851. The same were never recorded or registered in the office of the collector of the port of New York. The mortgagees, Joseph W. Hancox and Clement D. Hancox, have, for several years past, been residents of Jersey City. They commenced to foreclose the chattel mortgages, taking possession of the vessel on the 19th of August, 1851, Clement M. Hancox having become insolvent, and sold the vessel under the mortgages on the 3d September, 1851. But as soon as the vessel was attached, under the libel in this suit and before the sale, Joseph W. Hancox, one of the mortgagees, bonded her on such sale, purchased her in his own name, taking a bill of sale from Clement M. Hancox, the old owner, which was dated 3d September, 1851. On these facts the cause was argued by the counsel for the respective parties.

D. McMahon, Jr., for the libellant, contended:

I. That the claimant, Joseph W. Hancox, had no right to claim and intervene, as against creditors, because: (1) His chattel mortgages were not renewed under the local law—2 Rev. St. (3d Ed.) p. 196, § 11—by filing the copies in the office of the clerk of the county wherein the defendant resided or the property was situated; the owners residing in New Jersey and the mortgages being renewed in the city of New York. [U. S. v. 422 Casks of Wine] 1 Pet. [26 U. S.] 547, 550; Rule 26, Sup. Ct. U. S. (2) The mortgages were void as against creditors, also, because they were not registered or enrolled in the office of the collector of the port of New York, as required by the acts of congress. Stat. 1850, c. 27, § 1; [State of Rhode Island v. Commonwealth of Massachusetts] 12 Pet. [37 U. S.] 657; [U. S. v. Fisher] 2 Cranch [6 U. S.] 358; 1 Hill, 324; 6 Wend. 526.

II. Conceding he had a right to intervene, yet his mortgages could not exclude the claims of creditors furnishing materials or supplies, so that by their foreclosure all subsequent hypothecations of the vessel should be cut off, because: (1) For the reasons given in the last point. (2) Treating the vessel as a foreign vessel to the district, material men had a priority over chattel mortgages or any bottomry security. Abb. Shipp. 163; The Aline, 1 W. Rob. Adm. 111; [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328; The Chusan [Case No. 2,717]; The Nestor [Id. 10,-126]; The Jerusalem [Id. 7,294].

III. For that portion of the bill done after the 20th June, 1851, the libellant had a lien ad rem under the maritime law, irrespective of any subsequent departure from the state, because: (1) The vessel was a foreign vessel to this district, being owned by owners residing in another state. The St. Jose Indiano [Id. 12,322]; Selden v. Hendrickson [Id. 12,-639]; 1 Liverm. Ag. p. 171. c. 5. § 4; 1 Dod. 204; [The General Smith] 4 Wheat. [17 U. S.]

438; The Nestor [Case No. 10,126]; Davis v. New Brig [Id. 3,643]; The Robert Fulton [Id. 11,890]. (2) The enrollment of the vessel in the port of New York did not make her a domestic vessel, for the enrollment was to stamp her character as a vessel of the United States, as contradistinguished from foreign nations. Ring v. Franklin, 2 Hall, 1; 15 Johns. 298; Gordon, Dig. (4th Ed. of 1848) art. 196. (3) The nationality of the character of personal property, depends upon the domicile of the owner, not the situation of the thing. [The St. Jago de Cuba] 9 Wheat. [22 U. S.] 409; The Nestor [supra]. (4) Although Jersey City was, by act of congress, made part of the port of New York, yet it was for collection purposes, not for judicial purposes; the judicial districts of New Jersey and of the Southern district of New York being entirely separate. Act 1806, § 1 [2 Stat. 355]; Gordon, Dig. (2d Ed. of 1848) art. 2304; 10 Pet. 215; 14 Johns. 201.

IV. If the vessel be treated as a domestic vessel, then for that portion of the claim which accrued after the 1st May, 1851, and before 20th June, 1851, and which was furnished at Jersey City, was not furnished in her home port, New York, and therefore a lien accrued to the libellant.

E. C. Benedict and H. W. Robinson, for the claimant, contended:

I. The Kosciusko was a domestic vessel, and belonged to the port of New York. The port of Jersey City is the port of New York, both in maritime sense and as a matter of statutory regulation. Stat. U. S. March 2, 1811, c. 33; Gordon, Dig. § 1871. The port of New York was that to which, by statute, the Kosciusko belonged, it being the port adjacent the residence of the owner and the port of his residence. 1 Stat. 56. § 4. The harbor of Jersey City and of New York are coterminus in all respects, and are both one port. A vessel hauling from one place to the other does not leave any port, any more than a vessel would leave the port of Philadelphia by hauling up into the Northern Liberties, or London by moving from one of its many cities to another. Supplies furnished in the port of New York to a vessel owned by a resident of Jersey City cannot be said to have been furnished a foreign vessel. It would be physically impossible for a vessel lying at Jersey City wharf to be out of the port of New York. The Kosciusko was, therefore, whether lying at Jersey City or New York, in her home port and a domestic vessel, and there would be no lien for supplies, except as given by the state law, and that lien was discharged by the vessel leaving the port of New York on and previous to August 10th, in 12 days after any such departure, and immediately after she left the state on the 12th and 16th August. Hancox v. Dunning, 6 Hill, 494; opinion of Judge Betts in Haight v. The Alida [Case No. 199].

II. Should the court hold differently, and

that she was a foreign vessel, then there can be no lien for that part of the claim for supplies furnished at Jersey City, where the owner resided previous to 12th June, 1851.

III. The lien of the mortgagees created June 13, 1850, was not affected by the statute of the United States relating to the recording of conveyances of vessels subsequently passed, and which went into effect October 1, 1850, as the statute did not profess to and could have no retroactive effect on prior mortgagees. 1 Kent, Comm. 455; Johnson v. Burrell. 2 Hill, 238.

IV. The lien under which the claimant holds was prior in time to that of libellant, followed the boat wherever she went, was recorded and visible, was consummated by a possession under the mortgagees prior to the filing of the libel, and that possession could not be divested by the libellant claiming under a subsequent lien and of equal grade without payment, and the equity of redemption was foreclosed by the sale under the mortgages.

BETTS, District Judge. The remedy in rem in this court for supplies and repairs furnished a vessel foreign to this state, within the port, is in conformity to the maritime law, and is no way governed by the local law; but if the vessel be a domestic one, this court affords no remedy in rem unless a lien be given by the state law. This case rests on two questions: First, whether the demand of the libellant, or any part of it, was ever a lien on the vessel; and, second, whether, if the lien ever existed, it had been discharged when this suit was instituted.

Before stating the facts from which these propositions are drawn, it is proper to dispose of an objection taken to the competency of the claimant to intervene in the case. It is placed upon the ground that when his answer was filed he was only mortgagee of the vessel, having no proprietary interest in her. It is sufficient to say the libellant does not pursue the proper course to avail himself of the objection. After an answer has been received, and a replication filed to it, and the cause been brought to hearing upon merits, a libellant cannot be allowed to interpose an exception that the claimant had no legal right to contest the case. A proper allegation should have been filed, putting that fact in issue, preliminarily, and, if that is omitted, the libellant will be regarded as having waived the irregularity. But it appears upon the stipulation of the parties, that the claimant was in possession of the vessel, claiming the right to hold her under mortgage incumbrances, and a mortgagee in possession would have a possessory interest sufficient to entitle him to intervene and contest claims upon the vessel which would supersede and oust his right. This objection cannot, in either view, avail the libellant.

The steamboat Kosciusko was owned by Clement M. Hancox, and enrolled by him in the port of New York, April 12, 1850. She

was built in this state, and her owner, at the time of her enrollment, and until May, 1851, resided in this city. He has resided in Jersey City, in the state of New Jersey, since May 1, 1851. It is agreed in the written stipulation between the parties that the libellant resided in the city of New York, and as a shipwright, in June, July, and August, 1851, furnished labor and supplies to the steamboat, at the request of her then owner, amounting to $233.57, which sum, with interest from August 8, 1851, is now due; that the steamboat was taken to Jersey City December 19, 1850, and remained there undergoing repairs to June 20, 1851, and the services, materials, and supplies charged for up to August 8th were furnished the boat at Jersey City, and during that period her owner resided at that place. The items of account sued upon and attached to the libel commence May 1, 1851, and terminate August 8, 1851. Clement M. Hancox mortgaged the steamboat June 13, 1850, to Joseph W. Hancox, then residing in New Jersey, to secure the payment of $2,546.-59, with interest from the date, payable on demand. On the same day he executed another mortgage on the boat to Clement D. Hancox, of New Jersey, to secure the payment of $2,500, with interest thereon from November 3, 1849, payable on demand. These mortgages were given as security for moneys loaned by the mortgagees for the purchase of the boat, and to pay for supplies, and applied by the mortgagor to that purpose. Both mortgages were registered the same day in the office of the register in the city of New York, pursuant to the provisions of the state statute. 2 Rev. St. p. 71, §§ 9, 10. The mortgagor continued in possession of the steamboat. Copies of the mortgages were filed in the register's office June 3, 1851, to secure a renewal of the register notice. The mortgages were not recorded in the collector's office of this port, pursuant to the provisions of the act of congress of July 20, 1850. That act provides that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled. 9 Stat. 440. August 19, 1851, the mortgagees took possession of the steamboat under those mortgages. On the 23d of August the libel in this cause was filed, and the boat was attached by the marshal. Joseph M. Hancox bonded her on that arrest, and continued in possession as mortgagee till September 3, 1851, when she was sold by virtue of the two mortgages, and was bought by Joseph M. Hancox. On the same day Clement M. Hancox executed to him a bill of sale of the vessel.

The claimant regards the proceeding as one under the lien law of New York, and, ac-

cordingly, makes the defence by his answer that the steamboat was a domestic vessel, and that the lien, if one ever existed, had been discharged by the boat having repeatedly left this port for others, and also gone out of the state before suit brought. The libellant alleges that she was a foreign vessel, and subject to his demand by the general maritime law. An intermediate point also arises in the case as to the liability of the vessel in this court, in rem, for labor and supplies furnished her in New Jersey.

A vessel is personal property, and governed by the laws regulating personal property in respect to mere questions of ownership and incumbrances, and, consequently, as a general principle, it follows, in locality, the residence of the owner. It becomes part of the wealth of the state of which he is a member, and goes, on his decease, wherever it may at the moment be situated, according to the appointment of his domiciliary law. The register and enrollment acts of the United States no further touch the question of ownership of vessels than regards the national character of the owners. Abb. Shipp. 39, 115; 3 Kent, Comm. 133. It is nowhere required that a vessel shall be registered at the place she is owned, nor does the registry express or import more than that the owner is a citizen of the United States. When Clement M. Hancox removed his domicile to New Jersey, the vessel then belonged to him, became a part of his estate there, and, in relation to the domestic laws of New York, a vessel foreign to this state. Not only was that so by legal intendment in this case, but the steamboat was actually with him in his possession, within the state of New Jersey until June 20, 1851. Her coming into this port afterwards to transact business, or as her place of entry and departure on trading voyages, did not change the ownership and constitute her a New York vessel. Up to June 20, 1851, the labor put upon the vessel and the supplies sent her were all furnished in New Jersey, on board her, at her home dock. It is not proved that the laws of New Jersey provided a lien in favor of the libellant for those charges, and none is raised by the general maritime law. The credit will be presumed to have been given the owner personally. This point has heretofore been considered and decided in this court, and ruled the same way, and that decision, on appeal, was affirmed by the circuit court. The Teller [Case No. 13,822].

The stipulation between the parties does not discriminate the portion of the account of the libellant which applies to credits given the steamboat when actually lying within the district. The defence to that branch of the demand is that, if any lien arises under the state statute, it is released and avoided by the boat being allowed to depart from the port, either out of the state for a period of more than 12 days before suit brought; or, if the lien is given by the maritime law, and

is not sought for under the local statute, that the mortgage security to the claimant is anterior to it in date, and takes precedence as a legal incumbrance. It is admitted by the stipulation that, besides various preceding departures from the city on excursions, the boat left on a charter to Newark the 16th of August, and went from that place the 17th to Shrewsbury, where she broke down; and it was conceded on the argument that she was brought back in a disabled condition, and was arrested in this action after her return, and after possession was taken of her by the mortgagees under their mortgages. It is manifest upon that statement of facts, that the lien authorized by the state law, if any accrued, had been discharged under the express condition of the act, on the steamboat leaving the state the 16th of August for Newark and Shrewsbury. 2 Rev. St. p. 493, §§ 1, 3. The maritime law, however, afforded a lien for the supplies furnished her within this district, she not then being a domestic vessel, and a reasonable time to enforce it. The creditor was not bound to pursue his lien before the vessel left the port of refitment, and proper diligence was employed by arresting her on her first return, little over a week after the debt had entirely accrued. So long as the boat continued a foreign vessel, the creditor was not bound to put each demand in suit as it arose, but could furnish repairs and supplies to her when her necessities required, and consolidate the demands in one action, there being no unreasonable delay, amounting to laches, in prosecuting the claim. The credit commenced after June 20th and terminated August 8th, and the libel was filed August 23d, a period, in the whole, of scarcely two months.

The defence to this part of the demand must accordingly depend upon the validity of the mortgage security against the libellant. The debt sued for was due the libellant by admission of the stipulation, on the 8th of August, 1851, and became then a lien or charge upon the steamboat, but did not require a priority to liens subsisting at the time.

Had the boat been then owned or situated within the state, the registry of a mortgage upon her, according to the law of the state, would have given a priority of security over a tacit lien, accruing for reparations and supplies to the vessel. But on the change of the residence of the owner, taking with him the property, to the place of the residence of the mortgagee and with his full knowledge, the local law ceased to act upon the subject, and the mortgagee took no other security from the mortgage than accrued under the laws of the state of New Jersey, the place of their mutual residence, or the general law. The statute respecting mortgages of personal property does not apply to mortgagors and mortgagees resident out of the state, or affect property in the actual possession of the mortgagor unless it be within this state when the mortgage is given. 2 Rev. St. p. 71, §

10. Otherwise, the general doctrine governs the subject, and, the property being transitory, it belongs to the place of the owner's residence. Story, Confl. Law, § 376.

The creditor is not chargeable with notice of the existence of a mortgage on a foreign vessel, because of its registration in the registry of the city of New York, unless the mortgagor and vessel be there when the mortgage takes effect. That was not so in June, 1851, when the mortgage notice was renewed, and being a nonresident, the mortgagee is not within the provisions of the renewing act. Blatch. Stat. p. 737, § 2. But, independent of that point, in my opinion, the act of congress of July 29, 1850, applies to this case, and governs the rights of the mortgagee in respect to his lien on the steamboat. That act was not passed until after the mortgage was executed, and did not go into operation until October, 1850, and undoubtedly for one year, to June 13, 1851, the incumbrance could be legally secured by the state registry, provided the mortgagor continued to reside in the state for that time, as both he and his property would be subject to the state law, and his creditors would be bound to take notice of the provisions of the state law in respect to them. Statutes in relation to the registry of mortgages inure as appointments of a method of giving notice of the incumbrance (4 Kent, Comm. 170); and, in the case of mortgages of personal property, the renewed entry or registry must be made at the residence of the mortgagor to constitute a statutory notice (2 Rev. St. § 2). But had the notice in June, 1851, been sufficient under the state law, the act of congress was then in force, and would have applied to the case had the mortgagor continued to reside here, and have prevented that proceeding giving any security unless the mortgage was also recorded in the collector's office. The United States statute was then no less the law of notice than that of the state, and if it had not become the exclusive law in that respect, it must, at least, have as much effect as a state act to the same purport.

When the defence of an outstanding mortgage on a vessel is set up by a mortgagee in an United States court, even where it might retain priority by the local law, as against a tacit lien without re-registry, the mortgage becomes subject to the requirements of the United States act, and can be of no efficacy without being recorded as that act directs. If the two legislations subsist together, that of the state certainly cannot be claimed to extinguish the act of congress, and in this court the mortgagee must prove his compliance with the latter act, to be entitled to any advantage from the instrument as an encumbrance, the act declaring it shall not be valid against any person other than the grantor and his privies, and those having actual notice of it (section 1). In the absence of that record evidence, the mortgage must be held invalid as against the libellant, no actual no-

tice to him or its existence having been proved. The credit on which the action rests commenced after such re-registry, to wit, June 20th, and accordingly I must pronounce that the lien of the libellant takes priority of the mortgages (the mortgages being out of possession) set up in this case against his demand. The sale under these mortgages to the claimant is to be presumed regular and valid, but the purchaser took the vessel subject to the lien then subsisting in behalf of the libellant.

Ordered that the libellant recover the amount due him for labor and repairs furnished the steamboat within this district between June 20, and August 8, 1851, with interest from August 8. 1851, and that it be referred to a commissioner to ascertain and report the amount. It is further ordered that the libel be dismissed as to the residue of the demand, and that the question of costs be reserved until the coming in of the report of the commissioner.